IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

Damon L. Jant,                          )
                                        )
                    Petitioner,         )        Civil Action No.8:07-1067-JFA-BHH
                                        )
          v.                            )        **REPORT AND RECOMMENDATION**
                                        )        **OF MAGISTRATE JUDGE**
Warden of Lieber                        )
Correctional Institution,               )
                                        )
                    Respondent.         )
_____    )

        The petitioner, a state prisoner, seeks relief pursuant to Title 28, United States Code,

Section 2254.  This matter is before the Court on the respondent's motion for summary

judgment (Docket Entry #9).

        Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and

Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review posttrial

petitions for relief and submit findings and recommendations to the District Court.

        The petitioner brought this habeas action on April 19, 2007.  On July 23, 2007, the

respondent filed a return and moved for summary judgment.  On August 24, 2007, the

petitioner filed a response to the respondent's motion.

## PROCEDURAL FACTS

        The petitioner is currently confined at the Lieber Correctional Institution.  (Pet. at 1.)

In October 1998, the York County Grand Jury indicted the petitioner for murder, two counts

of possession of a weapon during the commission of a violent crime, armed robbery,

contributing to the delinquency of a minor, and possession of a pistol by a person under

twenty-one.  (Pet'r's Mem. Opp. Summ. J. Mot. at 1.)  Attorneys Philip Baity and Michael R.

Hitchcock represented the petitioner on these charges at trial.  The petitioner was tried on

March 8, 1999, before a jury with the Honorable Thomas W. Cooper, Jr., presiding.  (*Id.* at

1.)  He was found guilty as charged and sentenced to one year imprisonment for possession

of a pistol; three years imprisonment for contributing to the delinquency of a minor; thirty years imprisonment for armed robbery; five years imprisonment for possession of a weapon during the commission of a violent crime and forty years imprisonment for murder. (Pet'r's Mem. Opp. Summ. J. Mot. 1-2; App. 966-67; 981.) The petitioner filed a direct appeal. (Pet'r's Mem. Opp. Summ. J. Mot. at 2.) He raised the following issues for review:

> Whether the trial court erred in failing to find that the State acted in bad faith, as defined by the South Carolina Courts, thus denying the appellant due process under the South Carolina Constitution, when officers of the Rock Hill Police Department returned the alleged victim's wallet the day after the incident, which the State contended was the subject of the armed robbery and the basis for the shooting of the alleged victim, without conducting any tests on the wallet or preserving the wallet to allow the appellant to conduct his own independent analysis?

> In the alternative, should the court join with other jurisdictions that have recognized that the "flat bad faith requirement" for analyzing cases where the State loses or destroys evidence does not provide a defendant in a criminal case adequate protection and adopt a balancing test that weighs the culpability of the State in losing or destroying the evidence, the materiality of the evidence, and the prejudice to the defendant?

(Resp't's Mem. Supp. Summ. J. Mot. Ex. 11 at 29.) On November 17, 2000, the South Carolina Supreme Court affirmed the petitioner's convictions and sentence. *State v. Jant*, 00-MO-135 (S. C. S.Ct. filed November 17, 2000). The remittitur was sent down on December 7, 2000. (Resp't's Mem. Supp. Summ. J. Mot. Ex. 12 at 25.)

The petitioner then filed a pro se application for post-conviction relief (PCR) on April 26, 2001, in which he raised the following grounds:

> 1. Miscarriage of justice - innocent of murder and A Robbery and other crimes (sic);

> 2. Ineffective assistance of counsel; and

> 3. State misconduct.

2

(*Id.* at 26-30.)  The petitioner filed an amended PCR application on July 20, 2004, raising the following issues:

> Newly discovered evidence. Applicant was denied a fair trial and due process of law  when his co-defendant provided false testimony. Counsel has learned through investigation that Applicant's co-defendant, [N.A.], testified falsely during trial. (See   Affidavit of [N.A.], attached as Exhibit # 1). Inasmuch as [N.A.'s] testimony bolstered the State's theory that Applicant was looking for someone to rob, it was both material and highly prejudicial to  the Applicant at trial.

(App. 983-87.)  On December 7, 2004, a hearing was held before the Honorable John Hayes.  The petitioner was present at the hearing and represented by attorney Melissa Kimbrough.  On January 26, 2005, Judge Hayes denied the petitioner relief.  (App. 1046-1052.)  The petitioner appealed this denial.  On August 19, 2005, the petitioner filed a petition for Writ of Certiorari raising the following issues:

> 1)  Whether the PCR court erred in rejecting Petitioner's claim that the state coerced the co-defendant to testify falsely at trial?
>
> 2)  Whether the PCR court erred in failing to find that the recanted testimony of a critical state's witness satisfied the standard for newly discovered evidence thus warranting a new trial?

(Resp't's Mem. Supp. Summ. J. Mot. Ex. 12 at 37.)  On January 4, 2007, the South Carolina Supreme Court denied the petitioner a writ of certiorari and sent the remittitur down on January 23, 2007.  (*Id.* at 64-65.)

On April 19, 2007,  the petitioner filed this habeas action alleging the grounds:

> **GROUND ONE**:    Denial of Due Process/Prosecutorial Misconduct
> **SUPPORTING FACTS:** . . . One of the witnesses called against [the petitioner] was his 15 year old cousin, [N. A.] [Who] provided damaging testimony . . . which ultimately led to his conviction, especially in light of the unreliability of the testimony of the only other eye witness, Betty McCoy. This testimony included an assertion that [the petitioner] stated he was going to rob someone and that Mr. [A.] saw a gun prior to the robbery. . . .

3

**GROUND TWO**:  Denial of Due Process/Abuse of Discretion in failing to award a new trial
**SUPPORTING FACTS:**  The Post Conviction Court noted in Footnote 3 of its Order that "[t]he court does see some argument that Applicant, in spite of all of the other evidence, simply went armed into the women's restroom, at a place with which he was not familiar, to relieve himself and killed victim only when attacked. . . . However, this theory was asserted at trial, weighed by a jury, and obviously not believed."  . . . the court failed to properly evaluate the impact the perjured testimony had on the jury . . . .

**GROUND THREE:**  Denial of Due Process/Lost or Destroyed Evidence and coverup
**SUPPORTING FACTS:**  [The victim]'s wallet was discovered outside of the laundromat restroom. Without being tested for fingerprints, law enforcement returned the wallet . . . the day after the shooting. Thereafter, an officer . . . testified  . . . that the wallet had been tendered to SLED for testing. Such testimony was inaccurate, and made in an effort to conceal the fact that the wallet had been returned to [the victim's] family. . . .

**GROUND FOUR:** Denial of Due Process/Cumulative Effect of Errors
**SUPPORTING FACTS:** Based upon the aforementioned violations of . . . due process rights in presenting perjured testimony, in returning the wallet prior to testing, and in the Court's failure to properly evaluate [the petitioner's] claims, to the extent that these claims individually warrant such relief, the cumulative impact of these errors clearly demonstrate that [the petitioner's] trial and other hearings were not fair and that his due process rights were violated.

(Pet. 6-11.)

## FACTS

On August 25, 1998, the petitioner and his thirteen year old cousin, N.A., left their home in Charlotte and drove to Rock Hill in the petitioner's white Ford.[1]  At trial, N.A. testified that while on their way to Rock Hill, the petitioner told N.A. that he intended to "rob

---

[1]As N.A. was a juvenile (Pet. Ex. 2 -N.A.'s Supp. Aff. ¶ 8) at the time of these events, the respondent in his brief and materials redacted N.A.'s name and used only his initials. However, the petitioner refers to him by name.  While N.A. is now an adult, he was prosecuted as a juvenile in family court.  Therefore, out of an abundance of caution, as the respondents does, the undersigned will refer to him as N.A.

somebody." (App. 526.)  He further testified that after arriving in Rock Hill, they visited one of their cousins.  After approximately fifteen minutes, N.A. testified that he and the petitioner left their cousin's house and the petitioner again mentioned he wanted to rob somebody. (App. 514.)  N.A. testified that after driving around Rock Hill for a couple of hours, they stopped at a laundromat and the petitioner told him that he had to use the bathroom.  (App. 516.)

Howard Sterling and Betty McCoy were inside the women's bathroom.   McCoy testified at trial that the two had been drinking beer at Sterling's home and they had left to buy more beer.  (App. 275.)  She testified they stopped at the laundromat so that Sterling could use the bathroom.  (*Id*.) McCoy testified she followed him into the bathroom  because she had to use the bathroom also and she "had been with him before." (App. 275-76.)  She testified the men's bathroom was locked, so they were using the women's bathroom.  (App. 290.)

McCoy testified that she and Sterling had been in the bathroom for four to five minutes when the petitioner entered the bathroom knocking her to the floor.  (App. 276; 278; 292.) She testified he demanded money from Sterling.  (*Id*.)  She testified Sterling gave the petitioner his wallet and that the petitioner then pulled a gun out of his pants and fired three or four shots at Sterling.  (App. 277; 278;  293; 298.)  After the petitioner shot Sterling, McCoy testified she crawled out of the bathroom and ran to get help.  (App. 278; 281-82; 298.)

The petitioner testified at trial that when he entered the bathroom, he saw a woman sitting on the toilet with her pants down to her ankles and her bra around her waist.  (App. 680.)  He testified Sterling grabbed him from behind and slammed him against the wall. (App. 684.)  He testified Sterling hit him several times and the petitioner was able to get his gun out of his back pocket.  The petitioner testified Sterling grabbed his hand and several shots were fired with the first one striking the petitioner in his leg.  (*Id.*)

5

The petitioner testified he left the bathroom, got into his car, and told N.A. to drive him to the hospital. (App. 685.) An officer noticed N.A. driving erratically. (App. 357.) After a chase of five to six blocks at over twice the posted speed limit, N.A. stopped, got out of the car and told the officer that his cousin had been shot. (App. 357-360.) The petitioner exited the passenger side of the car and collapsed. (App. 361.) The petitioner was then transported to the hospital. (App. 364.)

## APPLICABLE LAW

### Summary Judgment Standard

Rule 56 of the Federal Rule of Civil Procedure states as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477

6

U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

### STANDARD OF REVIEW IN § 2254 PETITIONS

In addition to the standard that the court must employ in considering motions for summary judgment, the court must also consider the petition under the requirements set forth in 28 U.S.C. § 2254. Section 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in the State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the State court proceeding.

As "a determination of a factual issue made by a State court shall be presumed to be correct," a petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). With respect to reviewing the state court's application of federal law, "'[a] federal habeas court may grant the writ if the state court identifies the correct governing principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Humphries v.*

7

*Ozmint*, 397 F.3d 206, 216 (4th Cir. 2005) (*quoting Williams v. Taylor*, 529 U.S. 362, 413 (2000)). Further, "an 'unreasonable application of federal law is different from an incorrect application of federal law,' because an incorrect application of federal law is not, in all instances, objectively unreasonable." *Id.* "Thus, to grant [a] habeas petition, [the court] must conclude that the state court's adjudication of his claims was not only incorrect, but that it was objectively unreasonable." *McHone v. Polk*, 392 F.3d 691, 719 (4th Cir. 2004).

**EXHAUSTION AND PROCEDURAL BAR**

A. Procedural Bar

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. The two theories rely on the same rationale. The general rule is that a petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

1. Exhaustion

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions. Applications for writs of habeas corpus are governed by 28 U.S.C. § 2254 , which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States." The statute states in part:

> (b) (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that
>
> > (A) the applicant has exhausted the remedies available in the courts of the State; or
> >
> > (B) (I) there is either an absence of available State corrective process; or
> >
> > (ii) circumstances exist that render such process, ineffective to protect the rights of the applicant.

8

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction, it is clear that § 2254 requires a petitioner to present any claim he has to the state courts before he can proceed on the claim in this court. The United States Supreme Court has consistently enforced the exhaustion requirement.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal. SCAR 207; *Blakeley v. Rabon*, 221 S.E.2d 767 (S.C. 1976). The second avenue of relief is by filing an application for PCR. S.C. Code Ann. § 17-27-10 et seq. A PCR applicant is also required to state all of his grounds for relief in his application. S.C. Code Ann. § 17-27-90. Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim. If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting

9

a writ of habeas corpus in the federal courts. *Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977); *Richardson v. Turner*, 716 F.2d 1059 (4th Cir. 1983).

2. Procedural bypass

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts. If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, *Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, (i.e., direct appeal, appeal from PCR denial) and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote . . . not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case. *Reed v. Ross*, 468 U.S. 1, 10-11 (1984).

Stated simply, if a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a petitioner has failed to comply with state procedural requirements and cannot make the required showing

10

of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

3. Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner before this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *Matthews v. Evatt*, 105 F.3d 907 (4th Cir. 1997)(citing *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991); *Teague v. Lane*, 489 U.S. 288,297-98 (1989); and *George v. Angelone*, 100 F.3d 353,363 (4th Cir. 1996).

4. Cause and Actual Prejudice

The requirement of exhaustion is not jurisdictional and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. *Granberry v. Greer*, 481 U.S. 129, 131 (1987). In order to have such claims considered, a petitioner must show sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray*, 477 U.S. 478. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.*

Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error.

He is required to prove that specific errors infected the trial and were of constitutional dimensions. *United States v. Frady*, 456 U.S. 152 (1982).

In *Kornahrens v. Evatt*, 66 F.3d 1350 (4th Cir. 1995), the Court of Appeals stated that once a claim is determined to be procedurally barred, the court should not consider the issue on its merits. The Court noted that it is always tempting to discuss the merits as an alternative reason for a conclusion, but that once a court finds an issue to be procedurally barred, all discussion which follows is only dicta. *See Karsten v. Kaiser Foundation Health Plan*, 36 F.3d 8, 11 (4th Cir. 1993). Therefore, once a court has determined that a claim is procedurally barred, it should not stray into other considerations.

## DISCUSSION

The respondent states that Grounds One, Two, and Three are exhausted. However, the respondent contends that several of the issues asserted in Ground Four were not exhausted. The undersigned addresses exhaustion of these issues in the discussion of Ground Four below. Further, the undersigned also addresses exhaustion relating to the new evidence presented to this Court in support of Ground One.

**GROUND ONE**

In Ground One, the petitioner alleges his due process rights were violated when his co-defendant N.A.'s perjured testimony was presented at trial. (Resp't Mem. Opp. Summ. J. Mot. at 7.) The petitioner alleges the prosecution coerced N.A. to falsely testify against him. The petitioner raised this issue in his PCR proceeding and presented an affidavit from N.A. dated October 13, 2001, in which he recanted portions of his trial testimony. When he filed this habeas petitioner, the petitioner attached that affidavit and a second affidavit from N.A. dated April 16, 2007, in which N.A. recants additional portions of his testimony. (Pet. Ex. 2 - N.A's Supp. Aff.)

In his first affidavit, N.A. recanted only specific portions of his testimony. (Pet. Ex. 1- N.A.'s Aff.) In ruling on this issue, the PCR judge stated that N.A. did not recant all his

testimony. The PCR judge specifically pointed out that N.A. did not recant his testimony that the petitioner had stated that he wanted to rob somebody (App. 1048; 1050 n. 2), or that the petitioner had a gun that day (App. 1048.) In his second affidavit dated April 16, 2007, N.A. recants his testimony that the petitioner said he wanted to rob somebody and that the petitioner had a gun that day. (Pet. Ex. 2- N.A.'s Supp. Aff. ¶¶ 19, 20, and 22.) Further, in his second affidavit, N.A. states, "On October 11, 2001, I reviewed for the first time portions of my testimony at Damon's trial." (Pet. Ex. 1 - N.A.'s Aff. ¶ 11.) He states he did not address all of the testimony which he now recants because he was not provided with a copy of these portions. (*Id*. ¶ 23.) The undersigned notes that in his first affidavit, N.A. stated, "On October 3, 2001, I reviewed the transcript of my testimony in the case of <u>State v. Damon Jant</u>. Using a blue pen, I circled answers that I gave at trial that were not true. The pages of the transcript with untrue testimony are attached." (Pet. Ex. 1 - N.A. Aff. ¶ 2.)

The undersigned must first address the additional affidavit which the petitioner has attached to this habeas petition and whether this new evidence should even be considered in this habeas review. Ordinarily, a § 2254 petition is limited to the factual record developed in state court proceedings and § 2254(e)(2) limits a petitioner's ability to present evidence in a federal habeas proceeding that was not considered by the state court. Specifically, § 2254(e)(2) provides that a petitioner may not present evidence in a federal habeas proceeding that was not considered by the state court if he "failed to develop the factual basis of a claim in State court proceedings." 28 U.S.C. § 2254(e)(2).

A petitioner has not failed to develop a factual basis when he sought, but was denied, the opportunity to develop facts in state court. If, however, a petitioner did not take or seek the opportunity to develop evidence in his state habeas petition related to a particular claim, he has failed to develop the factual basis of the claim in state habeas court. 28 U.S.C. § 2254(e)(2); *Cardwell v. Netherland*, 971 F.Supp. 997, 1011 (E.D.Va.1997). As a consequence, the court is precluded from considering new facts presented for the first time

13

in federal habeas proceedings or granting an evidentiary hearing for the consideration. It is clear that section "2254(e)(2) is designed to restrict the development of facts in federal habeas proceedings that were not known to or considered by a state court." *Id.* at 1011. Thus, the petitioner's attempt to introduce the new evidence now hinges on whether he properly attempted to introduce the same in his state court proceedings.

Obviously, the petitioner did not seek to introduce this newly drafted affidavit in his PCR proceeding in 2005. However, the petitioner has offered no reason why he could not have obtained this additional affidavit from N.A. earlier. The court cannot consider the petitioner's new evidence because he did not seek to submit it to the South Carolina courts at the appropriate time. Further, the petitioner's claim before this court does not rely on a retroactive application of new constitutional law. 28 U.S.C. § 2254(e)(2)(A)(I). Also, the new evidence is not the type that "could not have been previously discovered through the exercise of due diligence." 28 U.S.C. § 2254(e)(2)(A)(ii). The petitioner had an opportunity to present all of his evidence when he first argued his claims before the state PCR court.

Additionally, the exhaustion doctrine is not satisfied when a habeas petitioner presents evidence which was not presented to the state court and which places his case "in a significantly different and stronger evidentiary posture than it was when the state courts considered it." *Brown v. Estelle*, 701 F.2d 494, 495 (5th Cir.1983). *See also* Sampson v. Love, 782 F.2d 53, 56 (6th Cir. 1986); *Stranghoener v. Black*, 720 F.2d 1005 (8th Cir.1983); *Jones v. Hess*, 681 F.2d 688, 694 (10th Cir. 1982); *Domainque v. Butterworth*, 641 F.2d 8, 12 (1st Cir. 1981). A claim is not rendered unexhausted simply because "bits of evidence" were not presented to the state courts. *Jones*, 681 F.2d at 694. However, when critical evidence is presented for the first time in a federal habeas proceeding, it cannot be said that the petitioner has "'fairly presented' to the state courts the 'substance' of his federal claim." *Anderson v. Harless*, 459 U.S. 4, 6 (1982). "To make federal habeas relief available in such circumstances would undermine the policies of comity and efficiency that underlie the

14

exhaustion doctrine."  *Wise v. Warden, Maryland Penitentiary*, 839 F.2d 1030, 1033 (4th Cir.1988).

At the PCR hearing, trial counsel testified that "by far the most damaging" part of N.A.'s testimony was that the petitioner had indicated that he wanted to rob someone that day.  (App. 1015.)  This portion of N.A.'s testimony was not recanted in his first affidavit and the PCR judge partially based his decision on this fact.  However, N.A. recants this "damaging" testimony in his supplemental affidavit.  This evidence may have been critical to the PCR's decision.

Therefore, the petitioner did not fairly present this claim to the state courts.  The state courts should have been given a chance to rule on this issue with both affidavits before them.  The failure to raise a claim in the first state PCR petition as required by state law provides an adequate state procedural ground for denying federal habeas corpus relief. *See Murch v. Mottram*, 409 U.S. 41, 46 (1972); *Bassette v. Thompson,* 915 F.2d 932, 937 (4th Cir. 1990). Similarly, if a petition before a federal court fails to raise a claim in state court and is precluded by state procedural rules from returning to state court to raise the issue, he has procedurally by-passed his opportunity for relief in state courts. In such a case, the exhaustion requirement is technically met, but a federal district court is barred from considering the habeas claim, absent a showing of cause and actual prejudice. *Coleman v. Thompson*, 501 U.S. at 750 (1991).  Therefore, the undersigned finds that this issue is not fully exhausted and the petitioner would be procedurally barred from raising it now.  Further, the petitioner has not argued any cause and prejudice.  Accordingly, based on the foregoing, the undersigned concludes that the petitioner's new evidence, N.A.'s second or supplemental affidavit, cannot be considered.

Even assuming this court could consider N.A.'s supplemental affidavit , this claim still fails.  First, the undersigned notes that, other than N.A.'s affidavits, there is no evidence of prosecutorial misconduct.  The PCR judge found that N.A.'s first affidavit was not credible

15

because it was given after trial, was not the subject of cross-examination, and N.A. admitted he had lied at trial in it. (App. 1049-50.) All of these reasons would apply to N.A.'s supplemental affidavit as well. Further, the PCR judge concluded that there was no credible evidence of prosecutorial misconduct. (App. 1050.) The PCR judge noted that N.A. testified at trial that nobody made him testify and that no one in the prosecutor's office promised him anything in exchange for his testimony. (App. 1048-49.)[2]

In order for a defendant in South Carolina to receive a new trial based upon after-discovered evidence, he must make a five-pronged showing. He must establish that the evidence: (1) is such that it would probably change the result if a new trial were granted; (2) has been discovered since the trial; (3) could not in the exercise of due diligence have been discovered prior to the trial; (4) is material; and (5) is not merely cumulative or impeaching. *State v. Spann*, 513 SE2d 98 (S.C. 1999). *See also United States v. Johnson,* 487 F.2d 1278 (4th Cir.1973) (holding district court on motion for new trial based on recantation of trial testimony properly took notice of suspicious circumstances surrounding recantation and properly drew on knowledge and observation gained by having presided at original trial); *Olson v. United States*, 989 F.2d 229, 231 (7th Cir.1992) (holding courts treat recantations with skepticism); *United States v. Provost*, 969 F.2d 617, 620 (8th Cir.1992) (holding "new trial motions based on recanted testimony are immediately suspect").

The PCR judge found that the alleged new evidence would not have changed the result of the trial and was not material to whether the petitioner was acting in self-defense. (App. 1052.) The PCR judge found N.A.'s affidavit "to have limited, if any, value and like

---

[2]The PCR judge also found that even if N.A.'s affidavit was believed in its entirety, it did not warrant granting the petitioner a new trial on after-discovered evidence. (App. 1050.) The PCR judge based this conclusion on the fact that not all the damaging testimony was recanted in N.A.'s first affidavit. However, now considering the supplemental affidavit which recants the damaging testimony, this ruling by the PCR judge would not be supported by the evidence. However, this was an alternate holding by the PCR judge and not the ground he found for denying relief. As discussed herein, he found, among other things, no prosecutorial misconduct.

most post-trial affidavits recanting testimony must be closely scrutinized." (App. 1049.) He noted N.A. was not subject to cross-examination and was unavailable. (*Id*.) He stated that "an affidavit by one professing to have previously lied under oath must be greeted with at least some suspicion." (App. 1050.)[3] The PCR judge then found N.A.'s affidavit "unworthy of belief." (*Id*.)

The PCR judge also found "no credible evidence of prosecutorial misconduct." (*Id*.) At the PCR hearing, one of the petitioner's trial attorney's, Michael Hitchcock, testified at the PCR hearing that the only witnesses as what happened in the bathroom were the petitioner, N.A., and McCoy or "the prostitute." He testified that in his opinion N.A.'s testimony "sunk [the petitioner's] case." (App. 992-95.)

The petitioner's other trial attorney, Philip Baity, and the assistant solicitor testified for the State at the PCR hearing. Baity testified that he and Hitchcock had attempted to interview N.A. before the trial, but N.A. would not speak to them. At trial, he testified that they had moved to exclude N.A.'s testimony based upon allegedly improper inducements, but the assistant solicitor testified during an in camera hearing that there had been no agreement made in exchange for N.A.'s testimony. (App. 1011-14.) Baity further testified that N.A.'s testimony was "extremely damaging" to the petitioner because he was present at the time of the shooting and had been with the petitioner for the entire day. Baity stated that N.A. testified that the petitioner had indicated a desire to rob someone and that they had driven around searching for a victim for about two hours. N.A. also testified that the petitioner forced his way into the bathroom where the shooting occurred. However, Baity also testified that there was sufficient evidence to go to the jury on the charges without N.A.'s testimony. (App. 1014-18; 1021-25.)

---

[3]The undersigned notes, as discussed more fully below, that when N.A. was testifying under oath during the in camera hearing at trial, he denied that prosecutors asked him to testify untruthfully. (App. 491.)

The assistant solicitor testified that N.A.'s claim that he or someone else told N.A. that he would spend the rest of his life in prison if he did not testify falsely was not true to his knowledge.  (App. 1026-27; 1030.)  He testified that the assistant solicitor who also worked on the case never met with the petitioner separately.  (App. 1030.)   Further, he testified he never told N.A. to testify untruthfully or how to testify.  (App. 1030.)  Finally, the solicitor testified that he thought there was sufficient evidence to convict the petitioner without N.A.'s testimony, but he admitted N.A.'s testimony helped.  (App. 1031.)

During the petitioner's trial, an in camera hearing was held regarding this issue and N.A. and his grandmother testified.  N.A.'s grandmother, Joanne Burris, testified that she and one of N.A.'s attorneys were present when the prosecutors spoke to N.A.  (App. 479.) She testified there was only two meeting with prosecutors and N.A. and she attended one and N.A.'s mother the other.  (App. 477-478.)  She testified that the family initially did not want N.A. to testify because they thought he would incriminate himself.  (App. 479.)  She testified that N.A.'s attorney indicated that the prosecutor could be very hard on him if he did not cooperate.  (*Id*.)  However, she testified that she never heard a prosecutor say this. (*Id*.)  She testified that prosecutors suggested how he should answer questions and N.A. stated he was going to tell the truth.  (App. 482.)

During the in camera hearing at trial, N.A. repeatedly testified that prosecutors did not ask him to testify untruthfully and he was going to tell the truth.  (App. 491; 492; 493-94.) He testified that no one made any suggestion or promises that if he testified things would go better for him.  (App. 488.)  He stated that he agreed to testify because his lawyer wanted him to.  (App. 488; 491; 492.)

The petitioner contends that "based upon [N.A.'s] two affidavits, and the lack of rebuttal by the State," it is clear the PCR judge's decision was contrary to, or an unreasonable application, of federal law.  (Pet'r's Mem. Opp. Summ J. at 9.)  The petitioner suggests that the State should have presented testimony from "all prosecutors and law

enforcement officers involved with N.A." to disprove N.A.'s allegations that his testimony was coerced. (*Id.* n. 5; 112.)  However, the State was not required to rebut the petitioner's allegations of prosecutorial misconduct; the petitioner had the burden of proving the allegations in his petition.  *Butler v. State*, 334 S.E.2d 813, 814 (S.C.1985).  Further, substantial deference is to be given to the state court's findings of fact. *Evans v. Smith*, 220 F.3d 306, 311-312 (4th Cir. 2000)("We . . . accord state court factual findings a presumption of correctness that can be rebutted only by clear and convincing evidence); *Bell v. Jarvis*, 236 F.3d 149 (4th Cir. 2000).  Finally, in habeas review, a determination of a factual issue made by a State court is presumed to be correct and the petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  *See also Fisher v. Lee*, 215 F.3d 438, 446 (4th Cir.2000).  Here, the petitioner has not shown that the PCR judge erred in finding there was no credible evidence of prosecutorial misconduct.  Absent a  finding of prosecutorial misconduct, this claim fails.  The PCR judge's ruling on this issue was not contrary to, nor an unreasonable application, of federal law.   Further, the PCR judge's ruling was not the result of an unreasonable determination of the facts.

**GROUND TWO**

The petitioner alleges in Ground Two that the PCR judge denied him due process by not awarding him a new trial based upon his findings.  He specifically alleges the PCR judge erred in failing to properly consider the impact of the perjured testimony.  (Resp't's Mem. Opp. Summ. J. Mot. at 10.)  In a footnote in his order dismissing the petitioner's PCR application, the PCR judge noted that he did "see some argument that Applicant, in spite of all of the other evidence, simply went armed into the women's restroom, at a place with which he was not familiar, to relieve himself and killed (sic) victim only when attacked. . . However, this theory was asserted at trial, weighed by a jury, and obviously not believed."

(App. 1052 n. 3.)  Based upon this footnote, the petitioner maintains that the PCR judge failed to properly evaluate the impact the perjured testimony had on the jury.

To grant relief based on this ground, the undersigned first would have to find N.A.'s affidavits credible and that his trial testimony was perjured because of prosecutorial misconduct.  As discussed above, however, the petitioner has not rebutted the PCR's judge's finding that N.A.'s affidavit was not credible and the testimony was not perjured. Accordingly, this issue is without merit.

**GROUND THREE**

In Ground Three, the petitioner asserts that his due process rights were violated when law enforcement officers gave Sterling's family Sterling's wallet prior to any testing and then concealed their actions.  (Pet'r's Mem. Opp. Summ. J. Mot. At 13.)   Law enforcement officers returned Sterling's wallet to the Sterling's family the day after the shooting without first testing it for fingerprints.  At trial , an officer incorrectly testified that the wallet had been sent to the State Law Enforcement Division ("SLED") for testing.  The petitioner argues that this inaccurate testimony was made in an effort to conceal the fact that the wallet had been returned to the victim's family.

At trial, Officer Joe Johnson of the Rock Hill Police Department testified he arrived at the crime scene and found Sterling's wallet laying on the ground outside the bathroom. (App. 385-86.)  Detective Les Herring testified in camera that the day after the murder, he received a call from his Captain asking him to talk to a member of Sterling's family because the family had requested the wallet and its contents.  (App. 90.)   Herring contacted Lieutenant Terry Taylor and asked him to give the wallet to the victim representative. Herring took photographs of the wallet and the money therein (App. 91) and then gave the wallet to Sterling's family.  Neither Herring nor Taylor knew whether any tests had been performed on the wallet.  (App. 85, 91.)  The trial court found the officers were carelessness and negligent.  (App. 117-118.)

20

On direct appeal, the petitioner raised the following issues:

> Whether the trial court erred in failing to find that the State acted in bad faith, as defined by the South Carolina Courts, thus denying the appellant due process under the South Carolina Constitution, when officers of the Rock Hill Police Department returned the alleged victim's wallet the day after the incident, which the State contended was the subject of the armed robbery and the basis for the shooting of the alleged victim, without conducting any tests on the wallet or preserving the wallet to allow the appellant to conduct his own independent analysis?
>
> In the alternative, should the court join with other jurisdictions that have recognized that the "flat bad faith requirement" for analyzing cases where the State loses or destroys evidence does not provide a defendant in a criminal case adequate protection and adopt a balancing test that weighs the culpability of the State in losing or destroying the evidence, the materiality of the evidence, and the prejudice to the defendant?

(Resp't's Mem. Supp. Summ. J. Mot. Ex. 11 at 29.)  On November 17, 2000, the South Carolina Supreme Court affirmed the petitioner's convictions and sentence in a memorandum opinion.  *State v. Jant*, 00-MO-135 (S. C. S.Ct. filed November 17, 2000).

The respondent contends that the state courts' rejection of this allegation was not contrary to and did not involve an unreasonable application of  any clearly established federal law as determined by the United States Supreme Court.   Specifically, the respondent submits that this issue is without merit because (1) there does not exist even the hint of bad faith by the Rock Hill police department, and (2) there would be no apparent exculpatory value in whatever testing the wallet for fingerprints would reveal.  (Resp't's Mem. Supp. Summ. J. Mot. at 19.)

Citing *Arizona v. Youngblood*, 488 U.S. 51, 55 (1988), the petitioner contends that "suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material to either guilt or punishment, irrespective of the good faith or bad faith of the prosecution." (Resp't's Mem. Opp. Summ. J. Mot. at 14.)  The trial court applied the *Youngblood* standard to this case and concluded that the police

21

handled the return of the wallet in a reasonable manner under the circumstances, and did not act in bad faith. Therefore, the trial court found that the petitioner failed to meet either prong of the *Youngblood* test. (App. 119-120.)

There is no question "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. State of Maryland*, 373 U.S. 83, 86 (1963). Furthermore, the due process clause imposes upon the State a duty to preserve exculpatory evidence for potential use by the defendant once the evidence has been acquired. *Youngblood*, 488 U.S. 51. However, the due process clause requires a different result when dealing with the failure of the State to preserve "evidentiary material which no more can be said than it could have been subjected to tests, the results of which might have exonerated the defendant." *Id.* at 56. In that instance, the United States Supreme Court holds "that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Id*.

The facts of this case are similar to those in *Dennis v. Seifert*, 2007 WL 777400 (N.D.W.Va. 2007). In *Dennis*, the police returned the car which allegedly had been used by the petitioner during the crime to its owner without having conducted any testing on it. The petitioner argued that if the police had searched the car for stains before they returned it to its owner, they could have verified the petitioner's version of some of the events that transpired. In addition, he alleged that had they dusted the steering wheel for prints, they could have found evidence that supported his version of some of the events. The court held that there was no evidence that the prosecution had withheld exculpatory evidence.

Likewise, here, the petitioner cannot show that the State failed to preserve exculpatory evidence. In fact, there has been no showing that there was ever any exculpatory evidence in the State's possession. What the test results would have been are

22

purely speculative.  The petitioner can allege only that the State failed to preserve evidence that <u>might</u> have been useful to discrediting a witness who had previously been impeached based upon her prior statements.  However, there is no evidence that the prosecution suppressed evidence favorable to the petitioner.  The undersigned notes that even if the wallet did not have the petitioner's fingerprints on it, this would not have exonerated him.  *Youngblood*, 488 U.S. at 57.[4]

The test then becomes whether the police acted in bad faith.  The petitioner has not established that the State had any knowledge that the wallet could have been exculpatory, nor has he provided any other evidence indicative of bad faith.  Furthermore, inasmuch as the State has no duty to gather evidence for the defense or search for exculpatory evidence, the petitioner has not established a denial of due process that would require this court to grant his writ on this ground.  Whether there was bad faith by the police . . . turn[s] on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed. *Youngblood*, 488 U.S. at 56.  There is simply no evidence that the police intentionally returned the wallet to avoid testing it or that any attempt was made to conceal the wallet from the petitioner.  Furthermore, what testing would have revealed is pure speculation.  Accordingly, the state court's decision was not contrary to, nor was not an unreasonable application, of federal law.

**GROUND FOUR**

In Ground Four, the petitioner alleges he is entitled to habeas relief  based upon the cumulative effect of all the violations he has raised.  (Resp't's Mem. Opp. Summ. J. Mot. at

---

[4]The undersigned notes that the gun used to shoot Sterling was found in the glove compartment of the petitioner's car and no fingerprints were found on it.  (App. 433-434.)

15.)  The respondent contends that this allegation was procedurally defaulted in state court proceedings because the petitioner failed to present this argument to the state supreme court citing *Coleman*, 501 U.S. at 729-30.  The petitioner contends this issue is not procedurally defaulted because each of the individual issues was presented to the state courts.  (Pet'r's Mem. Opp. Summ. J. Mot. at 16.)

Even assuming arguendo that the merits of this claim can be addressed, a legitimate cumulative error analysis evaluates only the effect of matters actually determined to be constitutional error, not the cumulative effect of all alleged errors.  *Fisher v. Angelone*, 163 F.3d 835, 852 n. 9 (4th Cir. 1998).  The undersigned has considered the merits of each of the petitioner's claims of error individually and concluded that there is no evidence that the petitioner has shown any error on these individual claims.  Therefore, a cumulative error analysis is unnecessary.  Accordingly, this claim is without merit.

## CONCLUSION

Wherefore, it is RECOMMENDED that the Respondent's Motion for Summary Judgment (# 9) be GRANTED and the habeas petition be DISMISSED WITH PREJUDICE.

IT IS SO RECOMMENDED.


s/Bruce Howe Hendricks
United States Magistrate Judge


February 13, 2008
Greenville, South Carolina


**The parties' attention is directed to the important notice on the next page.**


**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face

of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 10768
Greenville, South Carolina 29603

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).